IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROMAN RAFAEL ÁLVAREZ RODRÍGUEZ<br><br>Plaintiff<br><br>v.<br><br>THOMAS GILES MEYER A.K.A. THOMAS MEYER A.K.A THOMAS MEYER CHILDS, his wife, MRS. JANE DOE and their LEGAL CONJUGAL PARTNERSHIP; INSURANCE COMPANY ABC; ENTITIES X,Y Z; JOHN DOE; RICHARD DOE; LIBERTY EARLY RELEASE, LLC; THE LIBERTY CITY EARLY RELEASE TRUST #6 through its Trustee THOMAS MEYER CHILDS.<br><br>Defendants | CIVIL CASE NO: 24-1422<br><br>RE: **TORT ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, **Roman Rafael Álvarez Rodríguez**, through his undersigned attorneys, and respectfully **STATES** and **PRAYS** as follows:

**I.   INTRODUCTION**

1. Plaintiff, Mr. Roman Álvarez Rodríguez, is the son of Mr. Ángel Álvarez Reyes. Mr. Ángel Álvarez leased a studio apartment in a building located at Pedro Albizu Campos Street, Barrio Bajuras of the Municipality of Isabela, Puerto Rico, from defendant, Mr. Thomas Giles Meyer.

2. On October 23, 2023, Mr. Ángel Álvarez was gravely injured by way of a Liquified Petroleum Gas (LPG) explosion arising from a 20-pound cylinder. Said cylinder was installed illegally in a double enclosed space, that is, inside a kitchen cabinet of the small studio apartment

that Mr. Angel Alvarez leased from Mr. Thomas Meyer. The faulty and illegal installation of the cylinder was authorized and/or performed by the co-defendants.

3. Because of the explosion, Mr. Ángel Álvarez had 56% of his body surface area with second degree and third-degree burns on the face, neck, chest, abdomen, upper extremities (elbow to hands) and lower extremities (knees). He also suffered inhalation injuries (burns to the airways and pulmonary system). Due to complications caused by the burns suffered by Mr. Ángel Álvarez, his condition worsened, and he passed away on October 27, 2023.

II.     **JURISDICTION AND VENUE**

4. This Honorable Court has original federal diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a) as the amount in damages exceeds the sum of seventy-five thousand dollars ($75,000.00); and, because plaintiff is a resident of the state of New York, United States of America, and defendant is a resident of Isabela, Puerto Rico. This Honorable Court also has supplemental jurisdiction over the Puerto Rico law claims[1] pursuant to 28 U.S.C. §1367(a).

5. Pursuant to 28 U.S.C § 1391, venue is proper because the negligent acts and omissions giving rise to the damages claimed in the Complaint happened within this District of Puerto Rico.

III.    **PARTIES**

6. Plaintiff, Mr. Roman R. Álvarez Rodríguez, of legal age, resident and domicile of the state of New York, is the only son and heir of decedent Ángel Álvarez Reyes, who died on October 27, 2023.

7. Defendant Thomas Giles Meyer, also known as Thomas Meyer and Thomas Meyer Childs (hereafter "Thomas Meyer"), is of legal age, resident and domicile of Isabela, Puerto Rico.

8. Upon information and belief, Mr. Thomas Meyer is legally married and has established a legal conjugal legal partnership with his wife, Jane Doe, who has also been included as a defendant

---

[1] Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. §10801.

in this civil action. As soon as her real name is obtained through discovery, the complaint will be amended in accordance with the Federal Rules of Civil Procedure and Local District Rules.

9. Liberty City Early Release, LLC is a limited liability company organized under the laws of the Commonwealth of Puerto Rico on November 6, 2023. Its physical address is 202 Dr. Salas, Edificio Cardona Campos, Suite 3, Arecibo, P.R., 00612 and its postal address P.O. Box 140357, Arecibo, P.R., 00614.

10. Liberty City Early Release Trust #6, through its Trustee Thomas Meyer, is a trust registered in Puerto Rico through Notarial Act of Protocolization Number Thirty Seven before Notary John A. Stewart Sotomayor dated December 14, 2023. The trust was created under the laws of the State of Florida.

11. Co-defendants John Doe and Richard Doe are individuals whose names are unknown and who are citizens of the Commonwealth of Puerto Rico. They are the persons that are jointly and severally responsible for the damages suffered by Plaintiff and his deceased father Mr. Ángel Álvarez Reyes.

12. Entities X, Y, and Z are the fictitious names given to entities whose names are unknown, organized pursuant to the laws of the Commonwealth of Puerto Rico. Through the actions and/or omissions of their employees, agents, administrators, members, directors and/or subcontractors, are jointly and severally responsible for the damages suffered by Plaintiff and his deceased father Mr. Ángel Álvarez Reyes.

13. Insurance Company A and Insurance Company B are insurance companies authorized to, and do engage, in the business of subscribing insurance policies in Puerto Rico. Insurance Company A and Insurance Company B issued policies to Mr. Thomas Meyer, and/or any other person responsible for the damages claimed in this Complaint, to cover the damages herein claimed.

## IV.     FACTS

14. During the year 2006, Thomas Meyer bought a property located in 5181 Pedro Albizu Campos Street, Barrio Bajuras of the Municipality of Isabela.

15. After buying the property, Thomas Meyer built a residential three floor building which was divided into multiple apartments for rent.

16. In each apartment located in the residential building, a twenty-pound (20lb) gas cylinder was placed under total enclosure, adjacent to a gas burner located in the kitchen.

17. The faulty and illegal installation of the cylinder was performed with the knowledge, consent, authorization and/or participation of Thomas Meyer, and co-defendants John Doe, Richard Doe and Entities X, Y, and Z.

18. On or around March, 2023, the late Ángel Francisco Álvarez Reyes, leased one of the apartments located in 5181 Pedro Albizu Campos Street in Isabela, Puerto Rico from Thomas Meyer.

19. On October 23, 2023, Mr. Ángel Álvarez, left his partner's (Ms. Laurie Gomez) home in Rincón, Puerto Rico around 9:00 a.m., to run some personal errands.

20. On that same day, Mr. Ángel Álvarez went to his leased apartment in Isabela, Puerto Rico.

21. Upon his arrival at his apartment, Mr. Ángel Álvarez proceeded to ignite the burner of the stove. Subsequently, an explosion of Liquified Petroleum Gas (LPG) occurred within the apartment.

22. At approximately 11:50 a.m., Mr. Ángel Álvarez called Ms. Gómez to tell her that his apartment had exploded. At that time, Ms. Gómez was at her house in Rincón.

23. Minutes later, Mr. Ángel Álvarez called Ms. Gómez again to tell her that he did not feel well and that he should be taken to the hospital.

24. The explosion at Mr. Ángel Álvarez apartment was reported to 911 by Mr. David Gómez, a neighbor of Mr. Ángel Álvarez, at 11:55am.

25. Emergency services, including ambulance and firefighters, arrived at the scene approximately 15 minutes after the explosion.

26. Ms. Laurie Gómez arrived at the scene approximately 45 minutes after the explosion, the ambulance and firefighters were already there.

27. When Ms. Laurie Gómez arrived at the scene, she stood behind the ambulance and saw Mr. Ángel Álvarez inside of it.

28. A couple of minutes after that, Ms. Laurie Gómez entered Mr. Ángel's Álvarez apartment and noticed the bed mattress was removed, and the stove was outside the apartment.

29. The landlord, Thomas Meyer, was inside the apartment cleaning and removing the gas tank.

30. Thomas Meyer also publicly shouted to the other tenants in the building, demanding that they remove the gas cylinders that were installed in their apartments.

31. Ms. Gómez was not allowed to accompany Mr. Ángel Álvarez inside the ambulance, so she followed the ambulance with her own vehicle to Rafael Hernández International Airport, in Aguadilla, Puerto Rico.

32. Mr. Ángel Álvarez was transported from Rafael Hernández International Airport in Aguadilla to the "Centro Médico" of the Puerto Rico Medical Services Administration (ASEM) in San Juan by Aeromed.

33. After Mr. Ángel Álvarez departed from the Aguadilla airport, Ms. Gómez returned to her apartment in Rincon, picked up a backpack, and returned to Mr. Ángel Álvarez apartment in Isabela to see if she could find his personal items and documents.

34. When Ms. Gómez returned to Mr. Ángel Álvarez apartment, it was opened. At that time, she took pictures of the apartment. While she was at the apartment, Thomas Meyer followed her around, until she left to the hospital.

35. In the evaluation performed by the aeromedical team, Mr. Ángel Álvarez was described as oriented in person, place and time, with evident burns in his mouth, tongue, upper palate and pharynx with signs of narrowing airway and respiratory distress.

36. Mr. Ángel Álvarez, after a required immediate endotracheal intubation, was transferred and arrived at 3:47 p.m. to ASEM by Aeromed.

37. Due to the explosion, Mr. Ángel Álvarez suffered second and third degree burns in the face, neck, chest, abdomen, back and upper extremities accounting for 56% of his total body surface area, alongside internal injuries.

38. While at the hospital, Mr. Ángel Álvarez was on mechanical ventilation and vasopressors.

39. Mr. Ángel Álvarez was also taken to the operating room for thrombectomy, endarterectomy and repair of the femoral artery along with prophylactic escharotomies to the upper extremities, hands, chest and abdomen.

40. Mr. Ángel Álvarez required blood transfusions but developed altered renal parameters and was diagnosed with acute kidney insufficiency.

41. Mr. Ángel Álvarez also developed hypotension and renal failure.

42. Mr. Ángel's Álvarez condition worsened and suffered from two episodes of cardiac arrest that caused his death at 6:15pm on October 27, 2023.

43. The explosion of LPG was caused by a leak of the 20-pound storage gas tank that was installed in a double-enclosed space: inside a totally enclosed kitchen cabinet counter from where a rubber hose was connected to a stove that was next to the counter, and inside a small studio apartment.

44. The gas leak from the cylinder was caused by a faulty and irregular installation that was performed with the knowledge, consent, authorization and/or participation of Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z, in violation of state level laws and regulations.

45. Minutes after the explosion at Mr. Ángel's Álvarez apartment, Thomas Meyer willfully and illegally interfered with the original state of the scene of the explosion by removing, destroying, and contaminating evidence that was located inside Mr. Angel's Alvarez apartment.

46. Two key pieces of evidence were illegally occupied by Thomas Meyer: the 20-pound LPG storage tank from which the flammable gas leaked and the rubber hose connecting the tank to the stove.

47. Thomas Meyer also ordered all the other tenants in the apartment building to remove their gas cylinders.

48. Thomas Meyer actions after the explosion clearly established that he was aware that the 20-pound LPG storage tanks were illegally and incorrectly installed in a compromised and insecure manner in Mr. Ángel Álvarez's apartment, as well as in all the other apartments in the building.

49. In a further admission of his liability and negligence, mere days after the death of Mr. Angel's Alvarez, Thomas Meyer fraudulently began a series of transactions to divert assets belonging to him to third parties.

50. On November 6, 2023, pursuant to Deed Number Twenty-Nine before Notary John A. Stewart Sotomayor, Thomas Meyer transferred ownership of two real estate properties to "Liberty City Early Release Trust # 6".

51. The first property that was transferred to Liberty City Early Release Trust #6 was lot number 12,505 recorded at Page 172 of Volume 245 of Isabela, Registry of Property of Puerto Rico, Aguadilla Section.

52. The second property that was transferred to Liberty City Early Release Trust #6 was lot number 13,387 recorded at Page 21 of Volume 479 of Isabela, Registry of Property of Puerto Rico, Aguadilla Section.

53. Both properties were assigned a combined value of nine hundred thousand dollars ($940,000).

54. Thomas Meyer is both the Settlor and Trustee of the Liberty City Early Release Trust #6.

55. On November 7, 2023, Thomas Meyer, as both the Settlor and Trustee, executed a "Restatement of the Liberty City Early Release Trust #6" in which Thomas Meyer transferred to the trustee (i.e. himself) the property listed therein.

56. Pursuant to Section Ninth of the Restatement, during the life of the Settlor (Thomas Meyer), he would have all possessory rights, occupancy, and use of any real property, including that designated as homestead for property tax purposes, also stating that it was the Settlor's intention that all such homestead property shall retain its exemption rights for property tax purposes.

57. In contradiction with the above, on November 6, 2023, pursuant to Deed Number Twenty-Eight before Notary John A. Stewart Sotomayor, Thomas Meyer designated lot number 23,435 recorded at Page 25 of Volume 220 of Isabela, Registry of Property of Puerto Rico, Aguadilla Section as his homestead pursuant to Puerto Rico Law number 195 of September 13, 2011.

58. Lot Number 23,435 is the property located in 5181 Pedro Albizu Campos Street, Barrio Bajuras of the Municipality of Isabela, where the explosion took place.

59. Before and after November 6, 2023, Thomas Meyer rents different sections of the building in the property.

60. Article 3 of the Homestead Protection Act of Puerto Rico states: "Every individual or head of family residing in Puerto Rico shall be entitled to own and enjoy, under the homestead right

concept, a parcel and the structure located thereon, or a residence under the regime established in the Condominiums Act, which belongs to him/her or which he/she lawfully owns, and occupied by him/her or his/her family exclusively as a principal residence."

61. Thomas Meyer and/or his family does not exclusively occupy the property as a principal residence.

62. Also on November 6, 2023, pursuant to Deed Number Thirty before Notary John A. Stewart Sotomayor, Thomas Meyer transferred ownership of another two real estate properties through a simulated donation to "Liberty City Early Release, LLC".

63. The first property that was transferred to Liberty City Early Release, LLC was residential apartment number A-201 in the Haudimar Beach Apartments Condominum located in Isabela.

64. The second property that was transferred to Liberty City Early Release, LLC was residential apartment number G-303 in the Haudimar Beach Apartments Condominum.

65. Both properties were assigned a combined value of nine hundred thousand dollars ($825,000).

66. Thomas Meyer is the President and sole member of the Liberty City Early Release, LLC.

67. Through these fraudulent transactions, Thomas Meyer intended to transfer all real estate properties in his name, to evade his civil obligation to respond to Plaintiffs for his negligent actions and omissions.

68. Liberty City Early Release, LLC and Liberty City Early Release Trust #6 are included as parties with interest in the event that Thomas Meyer does not have sufficient assets to respond to Plaintiff for the Judgment that will be issued in this case.

69. Prior to the passing of Mr. Ángel Álvarez Reyes, Mr. Roman Álvarez was living in Puerto Rico, where he habitually visited his father and engaged in frequent and consistent communication with him.

70. Mr. Roman Álvarez lost his mother when he was still a minor. Prior to the explosion, his only living parent was Mr. Ángel Álvarez.

71. Due to the death of his father, Mr. Roman Álvarez permanently moved to live with an uncle in the state of New York and has suffered, and will continue to suffer, and enormous loss, including damages and mental anguish as a result of the physical damages and sufferings of his beloved father, as well as his subsequent death.

V.     **TORT CAUSE OF ACTION**

72. All the allegations stated above are incorporated and re-alleged below.

73. Thomas Meyer, as landlord of the apartment rented by Mr. Ángel Álvarez, is liable as a matter of law for the negligent and reckless acts and omissions that caused the explosion that led to the death of Mr. Ángel F. Álvarez Reyes.

74. Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z were negligent and grossly negligent for the installation of a 20-pound gas cylinder within a totally enclosed kitchen cabinet performed with their knowledge, consent, authorization and/or participation

75. The damage and the demise of Mr. Ángel F. Álvarez Reyes could have been avoided if Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z had not allowed the installation of a 20-pound gas cylinder under total enclosure adjacent to a burner gas stove.

76. Under the Puerto Rico Civil Code, Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z are liable for the damages, suffering, pain and losses caused to Mr. Roman Álvarez and his deceased father, Mr. Ángel Álvarez Reyes, caused by their negligent acts and omissions.

77. Under the Puerto Rico law, the physical and emotional pain experience by a victim of a tortious act, from its occurrence until their death, are compensable to the victim with the cause of

action passing to their descendants upon their demise, while also acknowledging that the emotional distress experienced by a decedent prior to death are recoverable as an element of compensatory damages.

78. The faulty and illegal installation of the gas cylinder which was the cause of the explosion was performed with the knowledge, consent, authorization and/or participation of Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z.

79. Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z knew or should have known that the installation of the gas cylinder under the kitchen cabinet of Mr. Ángel's Álvarez apartment, with an inappropriate hose connecting it to the gas stove was faulty, negligent and illegal.

80. The explosion at Mr. Ángel's Álvarez apartment happened as a direct consequence Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z, who in an adverse, illegal, negligent and faulty manner installed a gas cylinder storage under total enclosure adjacent to a burner gas stove.

81. The gas escaped from the cylinder due to an adverse, illegal, negligent and faulty installation.

82. As alleged above, the responsibility for the damage to the life and property of Mr. Ángel Álvarez falls upon Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z. It was under their knowledge, consent, authorization and/or participation, that an LPG storage cylinder was installed inappropriately, hidden inside a kitchen cabinet of a small studio apartment, under total enclosure, adjacent to a gas burner stove.

83. Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z acts and omissions in the installation of the gas cylinder at Mr. Ángel's Álvarez apartment are contrary to the NFPA 101 Life Safety Code, NFPA 58 Liquified Petroleum Gas Code, the Puerto Rico Fire

Department Fire Prevention Code, the law for Uniformity in the Sale, Distribution and Dispatch of Liquified Gas.

84. The actions and omissions alleged in this Complaint recklessly endangered Mr. Ángel's Álvarez life, therefore punitive damages are warranted against Thomas Meyer and co-defendants John Doe, Richard Doe and Entities X, Y, and Z that illegally and negligently installed the gas cylinder and authorized and/or consented to its installation.

V.     DAMAGES

85. Thomas Meyer's and co-defendants John Doe, Richard Doe and Entities X, Y, and Z negligent and illegal acts and omissions were the direct cause of the explosion event in which Mr. Ángel Álvarez suffered burns in several parts of his body.

86. Mr. Ángel Álvarez suffered extreme pain and anguishes from the burns in his body from the date the explosion occurred to the date of his death. Said sufferings and anguishes are estimated in an amount of not less than five million dollars ($5,000,000.00).

87. The burns in Mr. Ángel Álvarez body caused him injuries that later lead to subsequent events of cardiac arrest and death.

88. Thomas Meyer's and the co-defendants' John Doe, Richard Doe and Entities X, Y, and Z negligent and illegal acts and omissions also caused Mr. Roman Álvarez to suffer the loss of his only living parent and now, Mr. Roman Álvarez struggles with the fact that his father will never be part of his life again.

89. Thomas Meyer's and co-defendants' John Doe, Richard Doe and Entities X, Y, and Z negligent and illegal acts and omissions also caused that Mr. Roman Álvarez suffered the loss of emotional love, care, support, and companionship, of his father, causing Mr. Roman Álvarez emotional pain and suffering. Said damages are estimated in the amount of five million dollars ($5,000,000.00).

90. Thomas Meyer's and co-defendants' John Doe, Richard Doe and Entities X, Y, and Z negligent acts and omissions also caused that Mr. Roman Álvarez suffered the loss of reasonable contributions of pecuniary value that Mr. Roman Álvarez would have received from Mr. Ángel Álvarez. Said damages are estimated in the amount of five hundred thousand dollars ($500,000.00).

91. Additionally, punitive damages against the defendant are also warranted and requested in an amount of not less than one million dollars ($1,000,000.00).

**WHEREFORE**, Plaintiff, Mr. Roman R. Álvarez Rodríguez, respectfully requests from this Court that:

A. Judgement be entered against defendants for their illegal, faulty and negligent acts and omissions that caused irreparable damage to Mr. Ángel Álvarez and his son, Mr. Roman Álvarez.

B. Judgement be entered against defendants in amount of not less than five million dollars ($5,000,000.00) for the damages suffered by Mr. Ángel Álvarez from the moment the explosion occurred to the moment of his death.

C. Judgement be entered against defendants in amount of not less than five million dollars ($5,000,000.00) for the damages suffered by Mr. Roman Álvarez and that he keeps suffering for the death of his father, Mr. Ángel Álvarez.

D. Judgement be entered against defendants for the loss of reasonable contributions of pecuniary value that Mr. Roman Álvarez would have received from his father Mr. Ángel Álvarez. Said damages are estimated in the amount of five hundred thousand dollars ($500,000.00).

E. Judgement be entered against defendants in the amount of one million dollars ($1,000,000.00) for punitive damages,

F.  Judgement be entered against defendants for costs, expenses and attorney's fees in an amount of not less than five hundred thousand dollars ($500,000.00).

G.  Judgement against defendants for any other applicable relief.

**A jury trial is hereby demanded.**

**RESPECTFULLY SUMMITTED,**

In San Juan, Puerto Rico, this 13TH day of September 2024.

S/ **ROBERTO LEFRANC MORALES, ESQ**.
USDC-PR #210802
Email: rlm@martilaw.com


S/ **FRANCISCO RAMOS MARTÍNEZ**
USDC-PR #224711
Email: fjramos@martilaw.com


**MARTINEZ-ÁLVAREZ, MENÉNDEZ CORTADA & LEFRANC ROMERO, PSC.**
Edif. Centro de Seguros, Ofic. 407
Ave. Ponce de León 701,
San Juan, PR 00907-3248
Tel. (787) 721-1140 x-224
Fax (787) 724-1972
Attorneys for Plaintiff